RUTH E. MURPHY, Appellant, *v.* LAWRENCE E. MURPHY, Respondent.

No. 3505

May 25, 1948.                    193 P.2d 850.

*John S. Sinai,* of Reno, for Appellant.

*J. T. Rutherford* and *R. K. Wittenberg,* both of Reno, for Respondent.

## OPINION

By the Court, BROWN, District Judge:

This action was commenced in the Second judicial district court of the State of Nevada, in and for the county of Washoe, by Ruth E. Murphy, plaintiff, against Lawrence E. Murphy, defendant, on the 31st day of August 1946, by the filing of a verified Complaint, in which the plaintiff alleged, as the ground for a divorce, extreme cruelty, and that there were two minor children, John Lawrence Murphy, aged 8 years, and Elizabeth Leontine Murphy, aged 12 years, issue of the marriage. Thereafter, and on September 9th, 1946, an Appearance and Waiver executed by the defendant, was filed in the action, and on the same day the matter was heard by the court and a Decree of Divorce was entered in favor of the plaintiff, and the custody of the two minor children was awarded to the plaintiff. The appellant, plaintiff in the lower court, has appealed to this court from a judgment and order entered in said district court on the 10th day of July 1947, as amended, on the 18th day of July 1947, modifying the Judgment and Decree entered on the 9th day of September 1946, as aforesaid, in respect to the custody of the two minor children of the parties, and also from an order denying plaintiff's motion for a new trial, made and entered in the minutes of said trial court on the 4th day of August 1947. The parties to this appeal will be referred to as they appeared in the court below.

On the 24th day of January 1947, the defendant filed in the lower court a Notice of Motion to modify and change the original Decree of Divorce in reference to

the custody of the two minor children, or in the alternative for an order setting aside the original Decree of Divorce in toto, and permitting the defendant to withdraw his appearance in the action. This motion was made upon the grounds that the best interests of said children demanded a full and complete rehearing on the question of their care and custody, and that the appearance of the defendant was secured on fraudulent misrepresentations and promises of the plaintiff, and was heard by the court on March 18, 1947. At that time the court made the following order, to-wit:

"It Is Ordered that a hearing on the merits of the Motion, in the interest of the welfare of the minor children of the parties, in order that the Court may determine whether or not the decree of the Court entered herein, should be amended, set aside or clarified; that pending such hearing and determination, the younger of the minor children, shall continue in the custody of the plaintiff."

Thereafter, and on the 10th day of July 1947, a hearing was had on the merits of the motion, and the court entered the following Order Modifying Decree, to-wit:

"It is ordered, adjudged and decreed, that the decree heretofore entered herein on the 9th day of September, 1946, be and the same is hereby modified in the following respect:

"The portion thereof beginning on line 18, of page two thereof, reading as follows:

"That the agreement entered into between the parties, signed by the plaintiff on the 3rd day of September, 1946, and signed by the defendant on the 5th day of September, 1946, should be disapproved by the Court, and the plaintiff should be awarded the sole care, custody and control of the said minor children of the parties, John Lawrence Murphy and Elizabeth Leontine Murphy," be and the same is hereby stricken, and in lieu thereof, there is hereby inserted the following:

"The court further orders, adjudges and decrees that

the defendant is hereby awarded the care, custody and control of John Lawrence Murphy and Elizabeth Leontine Murphy, the minor children of the parties hereto, and the court expressly reserves jurisdiction of the custody and support of the children during their minority.

"The mother may have the said children with her for two weeks of each year, at a time during the school vacation, but she must make suitable arrangements for the children to be transferred from their home to hers and back, and the defendant shall bear one half of the cost of their transportation."

Thereafter, and on the 18th day of July 1947, an Amended Order Modifying Decree was entered by the court, which included the entire order made on July 10th, 1947, and added the following, to-wit:

"This order shall become effective on August 20th, 1947, provided, however, that the plaintiff on or before such date shall transport, John Lawrence Murphy, the minor child the issue of the above parties, to Cincinnati, Ohio, at her own expense."

One of the minor children, John Lawrence Murphy, is now living with the plaintiff at her home in Reno, Nevada, and the other minor child, Elizabeth Leontine Murphy, is now living with her father, the defendant, in Cincinnati, Ohio. Under the Amended Order Modifying Decree, the child living with the plaintiff in Reno, Nevada, was to be delivered by the plaintiff to the defendant in Cincinnati, Ohio, on or about the 20th day of August 1947, and at the time the plaintiff filed her appeal in this court, the said child was and now is in her custody in Reno, Nevada.

Upon reading the record, it is very apparent that the main question involved in this appeal revolves around a purported agreement signed by the defendant on September 3d, 1946, and by the plaintiff on September 5th, 1946, wherein the plaintiff agreed that the defendant was to have the care, custody, and control of the two minor children. This agreement was never introduced

in evidence at the time of the trial on September 9th, 1946, by the plaintiff, and the agreement itself was never presented to the trial court for its consideration. However, on the 29th of August 1946, the plaintiff sent the following telegram to the defendant, which was received by him in Cincinnati, Ohio, on August 30th, 1946, to-wit:

"Since you agree to sign will you have Tom or Rich phone or wire attorney here to represent you? Do this Friday so case can go to Court Saturday. Have already waited two weeks for your decision with representative here you can be sure your terms have been agreed to and signed before decree is granted." Signed, "Ruth."

The record does not disclose that plaintiff's counsel had any knowledge of this telegram.

At the time of the trial, counsel for the plaintiff asked the following questions with reference to the Agreement, to-wit:

"Q. You and your husband signed an agreement recently whereby the husband is to take the children giving you the right to have them for two months out of the summer and the right of visitation? A. Yes.

"Q. And you have also deeded him your interest in the home? A. Yes.

"Q. He required that of you? A. Yes.

"Q. Was that entirely satisfactory to you? A. No.

"Q. What was your reason for signing such an agreement? A. Because then he would sign so that I could have a legal decree in Ohio, and I simply couldn't live with him longer.

"Q. He said the decree would be no good in the State of Ohio? A. Yes.

"Q. You signed the agreement very reluctantly, didn't you? A. Yes, very."

The judge made the following minute order about 1:30 o'clock P. M. on the 9th day of September 1946, to-wit:

"The Court: Decree to plaintiff on the ground of cruelty, the minor children to plaintiff."

Thereafter, at about 4:30 o'clock in the afternoon, Findings of Fact and Conclusions of Law and a Decree of Divorce were submitted to the district judge for signature by counsel for the plaintiff, which were signed and filed on the same day at 4:47 o'clock P. M. In the Judgment and Decree, in addition to the Decree of Divorce, the following Order was included:

"That the Agreement entered into between the parties, signed by the plaintiff on the 3rd day of September, 1946, and signed by the defendant on the 5th day of September, 1946, is disapproved by the Court, and the Court does hereby order, adjudge and decree that plaintiff shall be and she hereby is awarded the sole care, custody and control of the minor children of the parties, John Lawrence Murphy and Elizabeth Loentine Murphy."

The defendant had no knowledge of the Judgment awarding the custody of the children to the plaintiff until about September 13th, 1946. Thereafter, and in November 1946, the plaintiff while in Cincinnati, Ohio, physically removed the minor child, John Lawrence Murphy, from there to Reno, Nevada. At the time of the hearing on the Motion to Modify the Decree in regard to the custody of the minor children on July 10th, 1947, the judge of the district court and counsel for the plaintiff made the following remarks, to-wit:

"The Court: I want to say this, at this time: that the decision of the Court would have been different if the Court had been confronted with this agreement at the time of the trial of the case.

"Mr. Sinai: Your Honor, may I make a statement in that respect at this time?

"At the time of the divorce action, Mrs. Murphy testified—I had in Court with me a copy of the agreement, and the transcript of evidence—

"The Court: I read it, and am familiar with it.

"Mr. Sinai: Your Honor recalls that, then I won't need to bother the Court with that. Then, the witness, having testified as she did, as to the cruelties practiced upon her by the husband, and from her attitude on the stand, and the fact that the agreement was actually before the Court at that time—

"The Court: It was not.

"Mr. Sinai: The Court made an order in the decree dis-allowing—

"The Court: And that, I want to say with respect to that: that the Court signed those findings and decree as a matter of habit, and the Court, on account of the many correspondence and papers it has to sign, does not always read all of them, and there are matters in the findings and decree that are not warranted by the testimony, because the Court made no order upon the hearing disapproving the agreement.

"Mr. Sinai: Well, the transcript—

"The Court: And the Court didn't read the transcript.

"Mr. Sinai: The transcript doesn't show that in so many words, but it was, I respectfully say this: That it was brought to the attention of the Court. The agreement was in Court at that time.

"The Court: It wasn't brought to the attention of the Court.

"Mr. Sinai: At that time, the Court disapproved the agreement, because, as she stated, that it was not satisfactory to her, and upon that —

"The Court: The record doesn't show that.

"Mr. Sinai: I know it doesn't.

"The Court: The record shows—The record does state this: That she signed it reluctantly.

"Mr. Sinai: Yes.

"The Court: And it was with the thought of the welfare of the children, after hearing her state that she signed it reluctantly, that the Court made the order that it did.

"Mr. Sinai: That is right, so what I mean, what I am attempting to convey to the Court, is that the Court at the time of the entry of the decree, and at the time of the decision, the oral decision, in respect to the divorce, was not kept in the dark as to the fact that an agreement existed between the parties; and the Court will note from the transcript, what I said, "You and your husband signed an agreement recently, whereby the husband is to take the children, giving you the right to have them for two months out of the summer, and the right of visitation."

At the time of the hearing on the motion on March 18th, 1947, the agreement was admitted in evidence over the objection of the plaintiff, but is made no part of the Record of Appeal, and this court has no opportunity to be advised of the contents of the agreement.

■ District courts have the inherent power to set aside judgments procured by extrinsic fraud. Lauer v. District Court, 62 Nev. 78, 140 P.2d 953.

Under district court rule XLV, the court has the power to vacate, amend, modify, or correct a judgment, order, or other official act or proceeding within six months after such judgment was rendered, order made, or action or proceeding taken, providing the party desiring such vacation, modification, or correction give notice to the adverse party of a notice of motion therefor. In this case rule XLV was complied with by the defendant.

■ Extrinsic fraud has been held to exist when the unsuccessful party is kept away from the court by a false promise of compromise, or such conduct as prevents a real trial upon the issues involved, or any other act or omission which procures the absence of the unsuccessful party at the trial. Further, it consists of fraud by the other party to the suit which prevents the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Landon v. Landon, 74 Cal.App.2d 954, 169 P.2d 980; Howard v. Howard, 27 Cal.2d 319, 163

P.2d 439; Stafford v. Stafford, 163 Kan. 162, 181 P.2d 491; Rogers v. Mulkey, 63 Cal.App.2d 567, 147 P.2d 62.

In this case the defendant signed an agreement with the plaintiff in regard to the custody of the minor children and was further assured by the plaintiff in a telegram that the terms of the agreement would be agreed to and signed before the decree was granted. His appearance and waiver filed in the action was executed by him relying upon the assurances that the terms of the agreement would be fulfilled. However, at the time of the trial, the plaintiff repudiated the agreement, and through her testimony induced the court to award the custody of the minor children to her, rather than to the defendant in accordance with the provisions of the agreement.

It is obvious that the district judge never saw the written agreement and had no opportunity to consider it at the time the original decree was entered. It further appears that at the time the findings of Fact and Conclusions of Law and the Decree of Divorce were submitted to the judge for his signature, they were not read by him, but simply signed as a matter of course upon the assumption that they included only matters contained in the minute order made from the bench at the time the decree was granted.

■ Here the lower court set aside and vacated that portion of the original decree in regard to the custody of the minor children. The oral and documentary evidence admitted at the hearing on the motion is voluminous and conflicting concerning the welfare of the minor children. Further, conditions concerning both the plaintiff and the defendant materially changed subsequent to the entry of the original decree. Both the plaintiff and defendant have each remarried—plaintiff's present husband was formerly the husband of the defendant's present wife. Also, the record discloses considerable bitterness between the defendant and

plaintiff's relatives in Ohio. Too often the fate of children, caused solely by the actions of their parents, is a most regrettable one. Under such circumstances courts are helpless to right the wrongs done. The lower court is given a wide latitude in the determination of questions relating to the custody of children. Black v. Black, 48 Nev. 220, 228 P. 889; Elsman v. Elsman, 54 Nev. 20, 31, 2 P.2d 139, 3 P.2d 1071, 10 P.2d 963.

■ Upon reading the affidavits and other evidence before the district court on the motion to modify the Decree, we are inclined to feel that had we been trying the facts we might well have felt that the best interest of the little boy would be better served by awarding his custody to the mother. However, the evidence is conflicting on this point and there is substantial evidence to justify the court's order awarding the boy's custody as well as the girl's custody to the father. This being the case we are in no position to interfere.

■■ The questions as to whether or not a fraud was committed upon the court by reason of which the custody of the minor children was awarded to the plaintiff under the original Decree of Divorce, and, the modification of the original Decree awarding the custody of the minor children to the defendant, were those of fact to be determined by the trial court upon the motion to vacate, modify, and set aside, from all of the evidence and circumstances presented to it. Following the long-established rule of this court, that where there is a substantial conflict in the evidence, the judgment of the trial court will not be disturbed, and in view of the fact that there is abundant evidence in this case to support the orders entered by the trial judge, those orders should be affirmed. Miller v. Miller, 37 Nev. 257, 142 P. 218.

It follows that the order setting aside that portion of the original decree in regard to the custody of the minor children as well as the Amended Order Modifying Decree and awarding the custody of the minor children to the

defendant, and the order denying the plaintiff's motion for a new trial, should be, and is, affirmed.

HORSEY and BADT, JJ., concur.

EATHER, C. J., being ill, the Governor designated Hon. MERWYN H. BROWN, Judge of the Sixth Judicial District, to sit in his place.

### ON PETITION FOR REHEARING

July 30, 1948.

*John S. Sinai,* of Reno, for Appellant.

*J. T. Rutherford* and *R. K. Wittenberg,* both of Reno, for Respondent.

*Per Curiam:*

The petition for rehearing is denied.

Plaintiff's counsel, however, seems to feel that the court's discussion of the item of fraud casts reflection upon him, and that the fraud of plaintiff could be imputed to her counsel. There should be no danger of such construction of our opinion. Immediately following our quotation of the plaintiff's telegram to her husband, on the strength of which she apparently obtained his submission to the jurisdiction of the court, we said: "The record does not disclose that plaintiff's counsel had any knowledge of this telegram." However, we have no reductance to giving counsel further assurance. He has been a respected member of the bar of this state for many years. In sustaining the lower court's modification of the original decree on both the grounds of extrinsic fraud and the best interests of the minor children, it was not our intention to impute to plaintiff's attorney any misconduct of any kind.