MARY COE MOORE, APPELLANT, *v.* PAUL F. MOORE AND VIRGINIA BENDA CHATHAM, ALSO KNOWN AS VIRGINIA BENDA CHATHAM MOORE, ALSO KNOWN AS V. BENDA CHATHAM MOORE, RESPONDENTS.

No. 4470

April 9, 1962                                                370 P.2d 690

*Vargas, Dillon & Bartlett* and *Alex. A. Garroway,* of Reno, for Appellant.

*Lloyd V. Smith,* of Reno, for Respondent V. Benda Chatham Moore.

# OPINION

By the Court, THOMPSON, J.:

By independent action under NRCP 60(b) Mary Coe Moore seeks to set aside a decree of divorce granted Paul F. Moore by a Nevada district court on October 5, 1955. The defendants are the said Paul F. Moore and Virginia Benda Chatham, also known as Virginia Benda Chatham Moore. Herein the parties will be referred to as "Mary," "Paul," and "Benda."

Brief mention must be made of the relevant background preceding the present case. Mary and Paul were married in Massachusetts on December 17, 1930. Almost 25 years later Paul commenced a divorce action against Mary in Nevada. Mary appeared therein through an attorney, though she was not personally present at the trial. On October 5, 1955 Paul was granted a divorce. On the following day Paul and Benda were married in Nevada. In June 1957 Paul filed an affidavit in the said divorce action, wherein he stated that he had not complied with the residence requirement for divorce. He thereupon stipulated with Mary that the decree of divorce entered on October 5, 1955 be vacated and set aside. On June 28, 1957 the district court, pursuant to such stipulation, entered its order vacating and annulling that decree.

Benda, claiming that she had not been notified of the proceeding to vacate the decree, filed an independent suit in November 1957 asking that the order vacating and annulling the decree be itself vacated and annulled because Paul and Mary had failed to disclose to the court Paul's marriage to Benda. Paul and Mary each appeared therein. Each side moved for summary judgment. Benda's motion was granted, vacating the order

of June 28, 1957 which had annulled the decree of October 5, 1955. The summary judgment thus entered for Benda was affirmed by this court in Moore v. Moore, 75 Nev. 189, 336 P.2d 1073, wherein we held (a) that the decree of divorce granted Paul in 1955 was not void on the face of the record but, at the most, voidable, and (b) that the 1957 proceeding to set aside said decree was ineffectual because Benda, being a necessary party, was not given notice thereof. The instant case followed.

Paul and Benda, defendants in the present action, were each served with process. Paul did not appear. Benda did. The thrust of Mary's complaint, seeking to vacate and set aside the 1955 divorce granted Paul, is that it was obtained by the extrinsic fraud of Paul. After filing a motion to dismiss the complaint, which motion was never argued, Benda moved for a summary judgment, basing that motion upon the records of the case, including the 1955 divorce action and the 1957 suit by Benda, together with the depositions of Paul, Benda and Mary which had been obtained. Mary also moved for summary judgment. She relied upon the same records and, in addition, the depositions of three attorneys who represented the parties to the 1955 divorce action. Argument on the respective motions for summary judgment was received, at which time counsel for Mary and Benda stipulated that Paul was not a resident of Nevada on October 5, 1955 when the divorce hearing was had and decree entered. After the argument on the respective motions for summary judgment, but before decision thereon, Benda obtained an ex parte order permitting her to file an answer to the complaint. In addition to denying the material averments of the complaint, Benda pleaded the statute of limitations, laches and estoppel as affirmative defenses thereto. Among other matters, the ex parte order provided that all of the defenses raised by Benda's answer could be considered in determining the motions for summary judgment previously argued. Upon being served with the answer and ex parte order, counsel for Mary moved to delete

that portion of the ex parte order permitting the court to consider, on the summary judgment motions, all defenses raised by Benda's answer. Mary's motion was granted. However, the court did permit the answer to be filed. Subsequently the lower court granted Benda's motion for summary judgment, and denied Mary's. It was that court's view that the fraud alleged by Mary did not constitute extrinsic fraud, with the result that a claim for relief was not stated, nor otherwise proven by the supporting papers; that as there was no genuine issue of material fact to be determined, Benda was entitled to an order granting her motion for summary judgment. Judgment was accordingly entered. Mary appeals.

1. Before discussing the merits of this appeal, we must first resolve the confusion resulting from the filing of Benda's answer. It is her position, as respondent here, that we may consider the issues raised thereby. On the other hand, Mary, the appellant, urges that such issues were not considered by the lower court and we may not consider them on this appeal. We agree with Mary. The respective motions for summary judgment, filed in the court below, sought to dispose of the entire case upon the record *as it then existed*. None of the issues later raised by Benda's answer were in the case at that time, nor were they mentioned during argument upon the said motions. The record does not reveal any attempt by Benda to present such issues for court adjudication *before* argument on the motions for summary judgment, nor did she seek to amend her motion for summary judgment to advise her opponent of her desire to have such issues determined. Though Benda had the right to file an answer to Mary's complaint, under the circumstances here present, the court below properly refused to consider the new issues raised thereby, in ruling upon the respective motions for summary judgment; nor will we consider them on this appeal.

190

2. As before stated, the prior law suit instituted by Benda against Mary and Paul resulted in a determination by this court that the 1955 decree of divorce granted Paul was not void on the face of the record but, at the most, voidable. Moore v. Moore, 75 Nev. 189, 336 P.2d 1073. In seeking to set aside that decree, Mary, in the case at bar, alleged, among other matters, the following: "That in or about the month of August, 1955, and while plaintiff and Paul F. Moore were still living and residing together, Paul F. Moore told plaintiff that he wished a divorce, that he would go to Nevada, that he would there establish legal residence, remaining and staying in Nevada in the future at least the requisite six weeks' minimum period, following which he would institute action in Nevada for divorce. That by reason of the importuning and repeated demands of Paul F. Moore that he be permitted to obtain a legal decree of divorce in Nevada without contest and upon his statements and representations that he would, commencing with the time of his anticipated future arrival in Nevada, establish a good and legal Nevada residence, plaintiff [as defendant in the divorce case] on or about September 7, 1955, executed a power of attorney. That Paul F. Moore advised plaintiff that he would, and he did, pay legal fees to counsel so designated in the power of attorney, that such counsel was suggested and obtained by Paul F. Moore, or his attorneys or agents, that such counsel was wholly unknown to plaintiff, excepting by name as designated in the power of attorney, and prior to October 5, 1955, no conferences or communications whatsoever occurred between plaintiff and said Nevada counsel so designated.[1] That without any disclosure, information, or notice whatsoever to plaintiff, and within approximately one month, to wit: September 5, 1955 to October 5, 1955, from the date that Paul F. Moore left the home of plaintiff and himself in Massachusetts, Paul F. Moore caused to be filed in Nevada the legal action referred to. That, acting

[1]The power of attorney was acknowledged before Mary's Massachusetts counsel.

under the power of attorney aforesaid, but without any disclosure, notice or information whatsoever to plaintiff, an answer was filed on behalf of plaintiff in the aforesaid Nevada action on October 5, 1955, the case was heard and on the same day a purported decree was entered   *   *   *." Mary then alleges that she first learned that the action was commenced and decree entered, after it happened, by reading about it in a newspaper; that she would not have executed the power of attorney but for Paul's representations that he would remain in Nevada at least the requisite six weeks' minimum period before commencing suit.

The allegations just mentioned are supported completely by the depositions offered in support of Mary's motion for summary judgment. They are not contradicted or disputed in any manner whatsoever. No factual issue is raised concerning them. It is our opinion that the court below erred in deciding that Mary did not establish a claim for relief based upon extrinsic fraud. Therefore, we shall confine our discussion to this claim of error.

Paul represented to Mary that he would remain in Nevada at least six weeks before filing suit for divorce. It was important to her that the divorce to be obtained by him was lawfully procured. Notwithstanding such representation, Paul commenced suit after approximately four weeks of residence. Neither Paul's attorney, nor Mary's, had any knowledge or reason to believe that his court testimony as to residence was false. Mary had not been in communication with her Nevada attorney before the divorce hearing. She was not advised in advance of the date upon which Paul's divorce case was to be heard. She did not learn until *after* the case was presented and decided that the hearing occurred only about four weeks following Paul's arrival in Nevada. Without question, she had no opportunity through her counsel or otherwise, *at the time of the hearing,* to advise the court that Paul had not met the residential requirement. Had she known of Paul's fraudulent scheme *in advance* or *at the time of trial,* a different question would be posed. Confer v. District Court, 49

Nev. 18, 234 P. 688; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061. Under such circumstance she would have had an opportunity to advise the court. Calvert v. Calvert, 61 Nev. 168, 122 P.2d 426; Mazour v. Mazour, 64 Nev. 245, 180 P.2d 103; Colby v. Colby, 78 Nev. 150, 369 P.2d 1019. However, Mary had no such opportunity here. In our opinion, the present case falls within the doctrine of Murphy v. Murphy, 65 Nev. 264, 193 P.2d 850. In that case, as here, there was conduct on the part of the plaintiff "which prevents the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial." In *Murphy* the defendant husband signed an agreement with plaintiff wife in regard to child custody, and was further assured by the plaintiff, in a telegram, that the terms of the agreement would be agreed to and signed before the decree was granted. He executed an appearance and waiver in reliance upon such assurance. However, at the time of trial, the plaintiff repudiated her agreement and, through her testimony, induced the court to award custody to her, rather than to the defendant, as provided by the agreement. Upon the defendant's later motion to modify the decree regarding custody, the district court, in granting it, found that extrinsic fraud had been practiced upon the defendant by the plaintiff. This court affirmed. We perceive no difference in principle between *Murphy* and the case at bar.

This court's decision in Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409, squarely supports our conclusion here. We there recognized that perjury alone does not constitute extrinsic fraud. However, we held that such perjury, together with the fraudulent concealment of the true facts from the opponent, thereby preventing the exposure of such perjury at the time of trial, does constitute extrinsic fraud. That is precisely what occurred in the instant case. Mary did not learn of Paul's perjury in time to expose it at the trial.

We do not consider Smith v. Smith, 68 Nev. 10, 226 P.2d 279, relied upon by Benda, to be in point with the case before us. In that case we affirmed an order of

the trial court which set aside an order, entered pursuant to stipulation, vacating a divorce decree. The record revealed that the stipulating parties to the vacating order had fraudulently concealed from the court the intervening marriage of one of them. Though the *Smith* case may have been good authority for Benda in the suit filed by her (see Moore v. Moore, 75 Nev. 189, 336 P.2d 1073) wherein she sought successfully to set aside an order entered pursuant to stipulation vacating a divorce decree, it is of no assistance to her in the defense of the present suit instituted by Mary. The issues involved in the two cases are quite different. In the instant case we are faced with the sole question of whether Mary has pleaded and supported her claim of extrinsic fraud. Such issue was not before the court in either Smith v. Smith, supra, or Moore v. Moore, supra.

For the reasons mentioned we hold:

(1) That the judgment below, granting the motion for summary judgment of defendant Virginia Benda Chatham, also known as Virginia Benda Chatham Moore, for the failure of Mary Coe Moore to prove extrinsic fraud, is reversed.

(2) The case is remanded for further proceedings upon the new issues raised by the answer of Virginia Benda Chatham, also known as Virginia Benda Chatham Moore, and not heretofore considered.

Reversed and remanded. No costs allowed.

BADT, C. J., and MCNAMEE, J., concur.