ALVERA M. ALDABE, APPELLANT, v. CHARLES D. ALDABE, ROBERT TAYLOR ADAMS, JACK STREETER, AND DAVID EVANS, RESPONDENTS.

No. 5304

ALVERA M. ALDABE, APPELLANT, v. CHARLES D. ALDABE, RESPONDENT.

No. 5305

June 7, 1968                           441 P.2d 691

*Martillaro & Bucchianeri,* of Carson City, and *Albert E. Polonsky,* of San Francisco, California, for Appellant.

*Donnell Richards,* of Reno, for Charles D. Aldabe.

*Goldwater, Taber* and *Hill,* of Reno, for Robert Taylor Adams.

*Sidney W. Robinson,* of Reno, for Jack Streeter.

*Paul A. Richards,* of Reno, for David Evans.

## OPINION

By the Court, ZENOFF, J.:

Alvera Aldabe appeals from judgments entered in two cases below which have been consolidated for the purposes of this appeal. In her suit to set aside the divorce decree obtained by Charles Aldabe the trial court granted summary judgment declaring the decree to be valid in all respects. In a second suit for damages the trial court entered judgment dismissing her entire complaint. We affirm both decisions of the lower court.

Alvera originally filed the divorce complaint as plaintiff in which she alleged Nevada residence. Almost immediately she became dissatisfied with her Nevada attorney and started the same proceeding in California claiming that state as her residence. Her husband, Charles, answered and counterclaimed in the Nevada action. Certain preliminary proceedings relating

to temporary support and custody thereafter took place. Through a California attorney Alvera notified her Nevada attorney that she no longer wanted him to represent her. Nevertheless, despite this notification, she thereafter personally appeared in his office in Reno to verify her reply to Charles' counterclaim in the Nevada action indicating thereby that he still represented her and that she continued to seek affirmative relief as stated in her initial complaint.

A period of time passed wherein she and her Nevada counsel did not contact each other. A hearing date was set for the Nevada divorce, but Alvera denies knowing of it. However, her Nevada counsel appeared, informed the court the circumstances of his relationship with his client, that he had been advised by her California counsel that they were not going to personally appear and make any effort to contest the counterclaim, that therefore he was not in a position to cross-examine or present any evidence. The divorce action proceeded with the court hearing evidence in support of Charles' counterclaim and a decree was entered. There are clear indications that Alvera knew of the Nevada divorce proceeding and certainly had actual knowledge of it when it was set up in bar in her California action. Yet, she took no steps in Nevada to contest it or to set it aside. The California trial court accepted the Nevada decree in bar, but the California District Court of Appeal, Third District, Aldabe v. Aldabe, 209 Cal.App.2d 453, 26 Cal.Rptr. 208 (1962), reversed on the ground that the trial court in granting summary judgment in favor of Charles erroneously denied admission of certain evidence proffered by Alvera seeking to test the jurisdictional facts upon which the Nevada decree was based. Accordingly, a new trial was ordered. The Court of Appeal, taking the evidence most favorable to Alvera, stated that it was possible that a material jurisdictional fact had been kept from the Nevada trial judge and because of this the Nevada court did not have jurisdiction to hear the divorce. Consequently, they indicated the decree to be invalid. The key fact that was allegedly withheld from the Nevada trial judge according to the California court was that the dwelling house of the parties was in California, not Nevada.

The ranch actually lies partly in California and partly in Nevada and in all is only a few miles from Reno, but the dwelling and outbuildings are on the California side. Since the parties dwelled in the abode, said the California court, they were California residents, not Nevadans. Exhaustive statements of facts appear in the California case previously cited and also Aldabe v. Adams, 81 Nev. 280, 402 P.2d 34 (1965),

and need not be repeated here. Instead, we first direct our attention to the question of the residential requirements of a divorce litigated in our court, because unquestionably the California decision encourages Alvera to seek to set aside the Nevada decree. Consistent with the California ruling her contention is that the Nevada court had no jurisdiction and the divorce was invalid. Our lower court in proceedings that predicated this appeal ruled otherwise.

1. The location of the buildings on the ranch property are incidental only in the consideration of all of the factors going to make up the residence. Residence is synonymous with domicile and it is consonant with the many decisions of our court that the *fact* of presence together with *intention* comprise bona fide residence for divorce jurisdiction. Whise v. Whise, 36 Nev. 16, 131 P. 967 (1913); Fleming v. Fleming, 36 Nev. 135, 134 P. 445 (1913); Tiedemann v. Tiedemann, 36 Nev. 494, 137 P. 824 (1913), also concurring opinion of Talbot, J.; Worthington v. District Court, 37 Nev. 212, 142 P. 230 (1914); State v. Moran, 37 Nev. 404, 142 P. 534 (1914); Presson v. Presson, 38 Nev. 203, 147 P. 1081 (1915); Aspinwall v. Aspinwall, 40 Nev. 55, 160 P. 253 (1916); Merritt v. Merritt, 40 Nev. 385, 160 P. 22, rehearing 40 Nev. 392, 164 P. 644 (1917); Blakeslee v. Blakeslee, 41 Nev. 235, 168 P. 950 (1917); Walker v. Walker, 45 Nev. 105, 198 P. 433 (1921); Barber v. Barber, 47 Nev. 377, 222 P. 284 (1924); McLaughlin v. McLaughlin, 48 Nev. 155, 238 P. 402 (1925); Confer v. District Court, 49 Nev. 18, 234 P. 688, rehearing 49 Nev. 26, 236 P. 1097 (1925); Lewis v. Lewis, 50 Nev. 419, 264 P. 981 (1928); Latterner v. Latterner, 51 Nev. 285, 274 P. 194 (1929); Hunnewell v. Hunnewell, 55 Nev. 150, 27 P.2d 1062 (1934); Prouse v. Prouse, 56 Nev. 467, 56 P.2d 147 (1936); Lamb v. Lamb, 57 Nev. 421, 65 P.2d 872 (1937); Wilson v. Wilson, 66 Nev. 405, 212 P.2d 1066 (1949); Blouin v. Blouin, 67 Nev. 314, 218 P.2d 937 (1950); Plunkett v. Plunkett, 71 Nev. 159, 283 P.2d 225 (1955); Weinstein v. Weinstein, 74 Nev. 40, 321 P.2d 245 (1958); Moore v. Moore, 75 Nev. 189, 336 P.2d 1073 (1959); Sutherland v. Sutherland, 75 Nev. 304, 340 P.2d 581 (1959); Baker v. Baker, 76 Nev. 127, 350 P.2d 140 (1960).

The trial courts of this state were satisfied that the Aldabes were Nevada residents. Charles Aldabe came to Nevada in 1918 as an infant. From that time to the present he has never been a resident of any state but Nevada. He always either lived in Reno or worked on ranches near Reno during his

boyhood until he and Alvera married in 1941. Together they lived on his father's ranch in Washoe County until 1942 when he purchased the Flynn ranch which is the property located in both Nevada and California. In spite of the geographical dividing line they obviously continued to consider themselves residents and domiciliaries of Nevada. Their mailing address, voting registration, school attendance, medical care, business and financial affairs, auto and operators' licenses, taxes, wills, and employment were all in Nevada. In other manifestations they declared intention of Nevada residence and performed continuous daily activities in Nevada. Alvera was employed in a gaming establishment in Reno, Nevada. She also attended the University of Nevada as a resident of this state. There is nothing in any of the records that speak of any intention to give up their residence as Nevadans to acquire that of any other state. Indeed this was fundamental to the trial court's decision in the original divorce proceedings.[1]

It appears to us with all deference and respect to the California appellate court that they were in some measure misinformed by Alvera not only as to her intention that California instead of Nevada was her residence, but also as to the financial circumstances of the parties that led that court to believe that unfair advantage had been taken of her. The implied excoriation of the Nevada attorneys leaves that impression. Yet, while the California court stated, "We have before us the entire record in the Nevada proceedings," no reference was made in that opinion to the fact that Alvera personally verified her reply in the Nevada proceeding. Alvera plainly submitted herself to the Nevada court and it then becomes questionable whether residence was an indispensable prerequisite for jurisdiction. And when both parties are thus before the court it may not be possible to later attack the decree outside the forum state. Cook v. Cook, 342 U.S. 126 (1951); Johnson v. Muelberger, 340 U.S. 581 (1951); Coe v. Coe, 334 U.S. 378 (1948); Sherrer v. Sherrer, 334 U.S. 343 (1948); Whealton v. Whealton, 432 P.2d 979 (Cal. 1967) (dictum).

Nevada has a legitimate interest in the adjudication of the marital status of these parties for their dominant interests were concentrated in this state. Both parties set up conduct taking place in Reno, Nevada, as grounds for divorce. The California District Court of Appeal recognized that Reno was the focal

---

[1]Corroborating evidence of Charles' residence was supplied by two witnesses who were well acquainted with the Aldabes. NRS 54.010.

point of this family's interests and activities. Thus, from the affiliating circumstances no compelling reasons appear for this forum to decline jurisdiction for divorce purposes and application of its domestic law. Currie, Suitcase Divorce in the Conflict of Laws: Simons, Rosenstiel and Borax, 34 U.Chi.L. Rev. 26 (1966); Leflar, Conflict of Laws and Family Law, 14 Ark.L.Rev. 47 (1959–1960); von Mehren and Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L. Rev. 1121, 1135–1179 (1966); Developments-Jurisdiction, 73 Harv.L.Rev. 909, 966–976 (1960).

2. The record before us shows that the Nevada court had jurisdiction based on residence of the parties to enter the decree. However, Alvera's action to set aside the decree not only attacks bona fide residence, but asserts that by conduct amounting to extrinsic fraud she was denied the opportunity to appear and defend the divorce proceeding. This is the essential predicate of her suit to invalidate the decree.

The extrinsic fraud was allegedly the result of concerted efforts of her Nevada attorney, her husband and his attorney, and a witness. These four parties were named as coconspirators in a second suit seeking $1,000,000 in damages. We turn to consider the question of extrinsic fraud.

The record does not substantiate Alvera's contention that she discharged her Nevada counsel, for subsequent to the alleged discharge she verified pleadings in his office and directed that he file the same, nor is there any formal withdrawal or substitution of attorney in the record. Both her Nevada counsel and her California counsel had knowledge of the hearing date. It is elementary that notice to the attorneys is notice to the client. Aldabe v. Adams, supra, p. 286; Zeig v. Zeig, 65 Nev. 464, 198 P.2d 724 (1948). We cannot accept Alvera's assertation that her Nevada counsel's appearance was without authorization, for the contrary is conclusively presumed, Barber v. Barber, supra, as well as established by the record. Furthermore, the rules governing the legal profession in this state provide that once an attorney has appeared in an action he may be changed upon the application of the attorney or the client with the consequent order of the court, or by stipulation but nothing of that sort was done. SCR 46. Apparently Alvera was aware that some assertive action was necessary if she desired to remove her Nevada attorney from the case for he told the court at the divorce hearing, "I have endeavored to have her appear here or at least substitute

counsel for me to appear at this hearing and for the purpose of this trial, but I have been advised by her attorney that they are not going to appear here and make any effort to contest the counterclaim of the defendant."

Alvera invoked the jurisdiction of this forum and was subject to it. Apart from the view that by her conduct she may be estopped from collaterally attacking the decree, Grant v. Grant, 38 Nev. 185, 147 P. 451 (1915), it is clear from the record that no facts establishing extrinsic fraud have been shown as a matter of law.

Alvera played an active role in the original divorce proceeding. She knew the important facts and circumstances upon which she now challenges bona fide residence in Nevada which is explicit in her reply to Charles' counterclaim. It cannot be seriously urged that Alvera did not have the opportunity to consult an attorney of her own selection since her allegations show that she had the advice and assistance of counsel of her choice. Not only did she employ Nevada counsel, but she repeatedly employed various independent California counsel, thus making her no stranger to lawyers.

Through her counsel Alvera had the opportunity to disclose the facts and present her position for adjudication by the court. There were no false promises of compromise nor any other acts or omissions which by design sought to prevent Alvera from ascertaining her rights and defenses or to deny a reasonable opportunity to present them at trial. It is apparent from the evidence that after initiating the divorce action in Nevada, Alvera voluntarily elected to refrain from further participation in the proceeding. Under the circumstances she is charged with the knowledge of the facts which she contends were fraudulently withheld and the obligation to inform the trial court. Though having had the opportunity to do something, Alvera did nothing. Procedural due process was accorded her and extrinsic fraud is not shown. Summary judgment was properly entered declaring the decree valid. Confer v. District Court, supra; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061 (1934); Lamb v. Lamb, supra; Calvert v. Calvert, 61 Nev. 168, 122 P.2d 426 (1942); Mazour v. Mazour, 64 Nev. 245, 180 P.2d 103 (1947); Murphy v. Murphy, 65 Nev. 264, 193 P.2d 850 (1948); Smith v. Smith, 68 Nev. 10, 226 P.2d 279 (1951); Howard v. Howard, 69 Nev. 12, 239 P.2d 584 (1952); Garteiz v. Garteiz, 70 Nev. 77, 254 P.2d 804 (1953); Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409 (1954); Moore

v. Moore, 78 Nev. 186, 370 P.2d 690 (1962); Colby v. Colby, 78 Nev. 150, 369 P.2d 1019 (1962); cf. Manville v. Manville, 79 Nev. 487, 387 P.2d 661 (1963).

Nor do the facts pleaded show that by reason of a conspiracy Alvera was prevented from presenting her case. The trial court correctly dismissed the entire complaint for damages. Wade v. Wade, 41 Nev. 533, 173 P. 553 (1913).

3. Furthermore, from the record it is clear that Alvera's allegation that the value of the ranch and community property exceeds $250,000 is grossly overstated. Nor was she left destitute. The Aldabes led a strictly budgeted existence. The ranching operation was always subject to prior indebtedness to a Nevada livestock association from whom Charles borrowed money constantly over the years for living expenses and to feed the cattle so that when the cattle were marketed the money had to be repaid. Little more than a living was realized even with the assistance of Alvera's income from working. When Alvera refused to continue to live with Charles she retained more than $4,000 accumulated in a savings account.

The record tells a story of continuing, contentious, vexacious, irritating and costly conduct by Alvera resulting in financial hardship to Charles, as well as depriving him of visitation with his daughter who remained with Alvera. Custody of their son had been awarded to Charles.

From the foregoing recitation we agree that the jurisdictional findings in the divorce proceeding which were affirmed by the lower court in this case were proper. Alvera's attempt to set aside the divorce decree contains no issue for further litigation. We reject the contention that there is any conflict creating material issues of fact that must be resolved by the trial court. Judgments were properly entered in favor of the respondents in both cases.

Affirmed.

THOMPSON, C. J., COLLINS, BATJER, and MOWBRAY, JJ., concur.