GERALDINE APPLEBAUM, Appellant and Cross–Respondent, v. STEVEN APPLEBAUM, Respondent and Cross–Appellant.

Nos. 8713 and 8714

July 5, 1977 566 P.2d 85

*Woofter, Coleman & Bilbray* and *Mark W. Gibbons,* Las Vegas; and *Lewis Kates,* Philadelphia, Pa., for Appellant and Cross-Respondent.

*Orin G. Grossman* and *Jack G. Perry,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

By the Court, MOWBRAY, J.:

The principal issue presented is whether extrinsic fraud by respondent, Steven Applebaum, induced appellant, Geraldine Applebaum, to execute a property settlement agreement, thus rendering it void. The district judge ruled there was no showing of fraud and upheld the agreement. We agree and affirm.

1. The parties were married in 1968. Geraldine was 24, and Steven 40, at the time of their marriage. That marriage terminated in divorce in 1972, in which proceedings the district court approved the property settlement agreement, the subject of this appeal. Therein, Geraldine was awarded $15,000 payable in $1,000 quarterly installments. The parties remarried in 1973. In 1975, they sought to have their second marriage terminated. Geraldine filed an action seeking to have the property settlement agreement, approved in the first divorce action, declared void. She also sought separate maintenance. Steven counterclaimed for an absolute divorce. The district judge granted Steven a divorce, refused to declare the property settlement void, and awarded Geraldine $12,000 payable in $1,000 monthly installments as her share of the community property. Geraldine appeals the lower court's refusal to declare the property settlement agreement void and the court's refusal to grant her alimony either permanently or pending this appeal. Steven has cross-appealed the district court's refusal to award him attorney's fees.

2. Geraldine contends that the property settlement agreement approved by the court in 1972 is void because of extrinsic fraud committed on the part of Steven. She has predicated the fraud charge on the claim that Steven was in a confidential or

fiduciary relationship with her when the agreement was negotiated; that Steven was much older than she and more experienced in business and financial matters; that he had remained in the house on a friendly basis during the pendency of the divorce proceeding; and that, in inducing her to sign the agreement, Steven misrepresented the nature and size of the community interest—the largest part of which lay in the increased value of Steven's business due to his community property services. The disparity between this interest, alleged to be $1,200,-000 and the $15,000 settlement, is claimed to render the agreement unconscionable and presumptively fraudulent.

While conceding that she consulted an attorney to determine if the agreement was enforcible, Geraldine claims she was unrepresented as to the substance of the agreement.

Geraldine, in support of her argument, relies heavily on Moore v. Moore, 78 Nev. 186, 370 P.2d 690 (1962). In *Moore,* this court reversed an order granting summary judgment in an action to set aside a divorce decree on the ground of extrinsic fraud and remanded the case for trial. According to appellant's affidavits in *Moore,* appellant had executed a power of attorney to her husband in reliance on his promise to establish legal residence in Nevada before obtaining a divorce. Instead, he commenced the action before obtaining residence, of which action she had no notice until after its resolution. In holding that these allegations stated a claim of extrinsic fraud, the court relied on Murphy v. Murphy, 65 Nev. 264, 193 P.2d 850 (1948), which it found to be indistinguishable in principle. In *Murphy,* the husband had executed an appearance and waiver in a divorce action on the assurance that the wife would adhere to a child custody agreement. The court held that her subsequent repudiation of that agreement constituted extrinsic fraud.

Geraldine cites no conduct on the part of Steven comparable to that of the respondents in *Murphy* or *Moore.* The parties executed a property settlement agreement, which Steven represented he would submit to the court for approval. This is precisely what he did; no term of the agreement signed by Geraldine was altered before its submission for the court's approval. That the agreement was drafted by Steven, who was older and more experienced in business than Geraldine, does not make it fraudulent. Nor does Steven's continued residence in the family home impose on him a fiduciary duty to his estranged wife. Once Steven announced his intention to seek a

divorce, Geraldine was on notice that their interests were adverse. It was not necessary for Steven to treat her with animosity to bring this fact home to her.

Finally, Geraldine concedes that Steven told her to retain a lawyer of her own choosing at his expense. Geraldine contends that she consulted this attorney only as to the enforceability of the agreement, not as to its substance, and so she was substantially unrepresented. If this is so, it cannot be charged to Steven. There is no evidence that he attempted to limit the scope of her representation. It does not appear, moreover, that her attorney was so strictly limited, nor that Geraldine accepted the agreement without question. The record shows that at least some provisions of the original agreement were reviewed critically and, as a result, an addendum submitted.[1]

Geraldine also contends that the district judge erred in failing to apportion the increase in Steven's separate property business during the period of the first marriage, as required by Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (1973). This argument is without merit. The *Johnson* rule applies only to cases in which the court must identify community property in order to effect an equitable division. It has no application when the parties have agreed upon a division of that property.

Even if the agreement had been found void, it does not appear that there was any community property interest in the

---

[1]MR. GROSSMAN [cross-examining Geraldine's attorney in the first divorce]:

Q. Now prior to the addendum, and I am going to ask you about the agreement, in case you need to refresh your memory. Prior to the addendum being drawn, did you have any discussions with Mr.—strike that, with Mrs. Applebaum?

A. Yes. I think these addendums are the points that Mrs. Applebaum was concerned about. The medical, her son's college and her apartment rent. She discussed ways in which to get the money and I don't know how long the discussion was.

Q. Then you called Mr. Keefer [Steven's attorney] regarding these points?

A. Yes.

Q. And what did you discuss with him?

A. Well, here again I think Mr. Keefer told me he did not have the right to make a stipulation for Mr. Applebaum and that he would tell Mr. Applebaum and get back to me. She said that her and her husband had met together and that these things had been worked out.

Q. Did you call Mr. Keefer back again?

A. I did, and if I recall, Mr. Keefer said yes, that Mr. Applebaum had called him and that Mr. and Mrs. Applebaum had met privately and worked out the agreement.

increased value of the business. Under either approach sanctioned by *Johnson, i.e., Pereira* or *Van Camp,* only a portion of the increase is allocable to community property, and from that interest must be subtracted any amounts drawn during the period of the increase to meet family expenses. Schulman v. Schulman, 92 Nev. 707, 558 P.2d 525 (1976); Beam v. Bank of America, 490 P.2d 257 (Cal. 1971). In the instant case, the trial judge found that any community interest in the increased value of the business had already been withdrawn for this purpose. This finding was amply supported by testimony as to the high standard of living enjoyed by both parties during the marriage.

3. NRS 125.150 provides that a court may, in granting a divorce, award alimony to a wife as appears just with regard to the merits and conditions of the parties.[2] In the instant case, the trial court concluded that Geraldine was entitled to neither permanent nor temporary alimony pendente lite.

While conceding the award of permanent alimony to be discretionary, Geraldine claims that the failure to grant it in the instant case was an abuse of discretion. The record does not support this contention. A similar claim was rejected in the case relied upon by Geraldine under substantially similar facts. See Buchanan v. Buchanan, 90 Nev. 209, 523 P.2d 1 (1974). In the instant case, the court concluded that Geraldine had adequate resources with which to support herself. Evidence sufficient to support this conclusion was presented at trial.

Geraldine finally contends that, in any event, the court erred in failing to award alimony pendente lite. She cites *Buchanan* and Braddock v. Braddock, 91 Nev. 735, 542 P.2d 1060 (1975), in support of this claim. Those cases are distinguishable. In *Buchanan,* the trial court, after considering the respective conditions of the parties, awarded the appellant support

---

[2]NRS 125.150, in relevant part:

1. In granting a divorce, the court may award such alimony to the wife, or to the husband if he is disabled or unable to provide for himself, in a specified principal sum or as specified periodic payments, and shall make such disposition of the community property of the parties, as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.

2. Whether or not application for suit money has been made under the provisions of NRS 125.040, the court may award a reasonable attorney's fee to either party to an action for divorce if the attorneys' fees are in issue under the pleadings.

pendente lite; on appeal, this court merely reinstated that order. In *Braddock,* the appellant stipulated to paying support pendente lite; this court enforced that stipulation, construing pendente lite to mean until final resolution of the case on appeal. Neither case is authority for reversing a trial court's refusal to grant temporary support.

4. Steven appeals from the court's refusal to award him reasonable attorney's fees as permitted by NRS 125.150(2).[3] He contends that this refusal was an abuse of discretion. This contention is unsupported by any relevant authority. Indeed, the record shows that Steven was financially secure and well able to pay his own attorney's fees. *See* Sargeant v. Sargeant, 88 Nev. 223, 495 P.2d 618 (1972). There was no abuse of discretion in denying his request for fees. To the contrary, evidence as to Steven's assets makes such a contention absurd.

We conclude, therefore, that the judgment of the trial court should be affirmed in all respects. The property settlement agreement is valid and was properly upheld; it does not appear to have been obtained through fraud or duress, and it was executed by two parties dealing at arms' length in full knowledge that there interests were adverse. Neither did the court below err in failing to apportion the increase in Steven's separate property business. Such an allocation must be made when the court determines the division of property, but not when the allocation is agreed upon by the parties. Finally, the trial court did not err in refusing to award Geraldine temporary or permanent alimony or in refusing Steven attorney's fees. The court has a broad range of discretion in such issues, and it does not appear to have abused it in the instant case.

Affirmed.

BATJER, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

[3]*Id.,* subsection 2.