JANE COOK, now JANE FIELD, Appellant, v.
FRANK C. COOK, Respondent.

No. 26135

February 29, 1996                    912 P.2d 264

---

*Daniel Marks,* Las Vegas, for Appellant.

*William R. Phillips,* Las Vegas; *Williamson & Rush,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Jane Field Cook, now Jane Field, ("Jane") and Frank C. Cook ("Frank") were married in 1978, and later that same year Frank started his own law practice in Las Vegas. The parties decided to divorce in December 1992. Frank drafted a property settlement

agreement providing, *inter alia*, that he would receive the law practice as his separate property and that Jane waived any interest in his income for the years 1990, 1991, and 1992. Although Jane had Floyd Hale, Esq., review the property settlement agreement on her behalf, she signed the agreement in proper person. On the other hand, Frank and his legal counsel, William B. Terry, both signed the agreement. On December 31, 1992, Frank filed a complaint for divorce with the district court through his counsel, Jane filed her answer in proper person, and the district court heard the matter and issued a decree of divorce that same day.

On June 25, 1993, Jane filed a timely motion to vacate the divorce decree and for a new trial pursuant to NRCP 60(b), alleging that the property settlement agreement was fundamentally unfair and that Frank had coerced her into signing the agreement. Jane submitted an affidavit stating that Frank had threatened her not to retain an attorney for the divorce action because he would lose his law practice, face imprisonment and resort to leaving the country due to tax evasion. Jane further submitted an affidavit from Kenneth Fortney, a certified public accountant, who evaluated the parties' community property and determined that Frank had received approximately $600,000 and Jane $100,000 of the $700,000 community property estate.[1] Frank submitted an affidavit denying Jane's assertions of coercion and argued that Jane received legal counsel from Floyd Hale before signing the property settlement agreement.

The district court denied Jane's motion, specifically finding that Jane had independent competent counsel to represent her and that Frank did not coerce Jane into signing the agreement. Jane argues that the district court abused its discretion in denying her motion. We agree.

The district court has wide discretion in deciding whether to grant or deny a motion to set aside a judgment under NRCP

---

[1]Fortney determined that the community property assets totalled $1.5 million, based upon his evaluation of tax returns and the information in Jane's possession. Fortney further stated that Frank received $1.1 million and Jane received $402,000. Yet, "[a]fter the liabilities were factored in, the net equity of this marital estate was $707,000, the husband received $607,000 and the wife received approximately $100,000." Fortney further stated:

> It is my professional opinion that this Property Settlement Agreement was grossly inequitable and unfair to the wife. That she did not from my discussions with her regarding the finances of the community, [sic] she had very little understanding or conception of the nature of the community property these parties had and did not fully understand that she had a community property interest in her husband's law firm since that law firms [sic] was started during the marriage.

60(b). Its determination will not be disturbed on appeal absent an abuse of discretion. Stoecklein v. Johnson Electric, Inc., 109 Nev. 268, 271, 849 P.2d 305, 307 (1993). However, this discretion is a legal discretion and cannot be sustained where there is no competent evidence to justify the court's action. *Id.*

We conclude that the district court abused its discretion by denying Jane's motion to vacate the divorce decree and for a new trial. There is no competent evidence to support the district court's finding that Jane was represented by independent counsel. Most significantly, Jane signed both legal documents central to the divorce action in proper person: her answer to Frank's complaint for divorce and the property settlement agreement. Under NRCP 11:

> Every pleading, motion, or other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper, and state his address and shall acknowledge his pleading.

Here, no attorney signed Jane's answer to the complaint for divorce or the property settlement agreement on her behalf. She signed her papers without such benefit. Further, the record contains no notice of representation indicating that Floyd Hale represented Jane in the divorce action. The evidence dictates the finding that Jane had no legal representation.

Given the conclusion that Jane was not represented by competent independent counsel in the divorce action, Williams v. Waldman, 108 Nev. 466, 836 P.2d 614 (1992), is on point. In that case, Sharron Williams, a non-attorney, and Herbert Waldman, an attorney, decided to end their thirteen-year marriage. *Id.* at 468, 836 P.2d at 616. When the parties made their decision, Waldman suggested to Williams that they save the expense of hiring an attorney and offered to draft the divorce papers himself. *Id.* Waldman prepared the property settlement agreement and other papers, represented to Williams that the agreement was fair to her and their three children, and did not propose to her that the agreement be reviewed by independent counsel. *Id.* Williams signed the papers without consulting an attorney, and the court entered a divorce decree. *Id.* Seven years later, Williams sought an increase in child support. *Id.* She retained an attorney who reviewed the property settlement for legal background and asked Williams about the division of Waldman's law practice. *Id.* "[T]his was the first time that she became aware that Waldman's law practice was community prop-

erty, divisible upon divorce, with a monetary value which inured to her individual benefit.'' *Id.* Williams then filed an action alleging that Waldman's law practice was not provided for in their property settlement agreement. *Id.*

The district court concluded that Williams failed to prove by a preponderance of the evidence that the law practice was not divided upon divorce. *Id.* Williams appealed, and this court reversed. *Id.* at 474, 836 P.2d at 619. This court determined that the parties' agreement was the product of an attorney-client relationship. *Id.* at 471, 836 P.2d at 618. This court noted that ''an attorney-client relationship is not precluded by the mere fact of a legally close or blood relationship'' and that ''[f]ormality is not a necessary element in the creation of such a relationship.'' *Id.* This court stated that ''when advice is given by an attorney, the attorney-client relationship may be established through proof of detrimental reliance.'' *Id.* at 471 n.3, 836 P.2d at 618 n.3 (citing 7A C.J.S. *Attorney & Client* § 169 n.18(2) (1980 & Supp. 1991)).

In *Williams*, this court further stated:

> An attorney-client relationship necessarily gives rise to a fiduciary relationship between an attorney and client, and all transactions growing out of such a relationship or [sic] subject to the closest scrutiny by the courts. We have also held that when an attorney enters into a business relationship with a client which is, by its terms, potentially advantageous to the lawyer, this court will closely scrutinize such a transaction on appeal. A fiduciary relationship also arises from the existence of the marriage itself, thus precipitating a duty to disclose pertinent assets and factors relating to those assets.

*Id.* at 471-72, 836 P.2d at 618 (citations omitted). This court stated that the record showed that Williams was not fully informed of all material facts relating to the value and character of Waldman's stock ownership and that Waldman failed to demonstrate that Williams completely understood her property rights when she executed the agreement. *Id.* This court determined that ''after a careful review of the record, that under the circumstances of this case, where Williams did not have independent representation, she did not have fair opportunity to present this issue [the division of the law practice] to the original divorce court.'' *Id.* at 474, 836 P.2d at 619. Accordingly, this court remanded the case to the district court for the division of Waldman's law practice. *Id.*

In *Williams*, an attorney and a non-attorney divorced; the attorney suggested that the non-attorney not retain legal counsel;

the attorney promised to draft a fair and equitable property settlement agreement; the non-attorney relied upon the attorney's representations and expertise; the non-attorney signed the property settlement agreement drafted by the attorney without the benefit of independent legal counsel; and the property settlement agreement was unfair because it did not equitably divide the community interest in the law practice.

In the instant case, the facts are parallel but with a few nuances. According to Jane, Frank allegedly not only suggested that she not obtain legal counsel but threatened her not to retain an attorney because it would diminish their community property and he would go to prison or resort to leaving the country due to tax evasion. Further, there is a difference in the property settlement agreement, not with regard to its inequity, but relating to division of the law practice. In *Williams*, the agreement did not specifically mention the law practice. Here, the agreement specifically awards the law practice to Frank but fails to value it. Further, the agreement states that "the Wife, Jane F. Cook, has not been advised and has no knowledge of the income earned by the Husband, Frank C. Cook, for the years 1990, 1991, and 1992, and waives any interest in said income." Yet, in another provision, Jane agreed to be liable for one-half of the federal income taxes on the 1990 and 1991 income even though she waived any interest in the income itself.

*Williams* stands for the proposition that in a divorce action between an attorney and a non-attorney, where the attorney drafts the property settlement agreement representing that it is fair and equitable and where the non-attorney signs the agreement without the benefit of independent legal counsel, the agreement is the product of an attorney-client relationship giving rise to legal ramifications. These ramifications include the following: the agreement is subject to this court's close scrutiny on appeal; the attorney has a duty of full and fair disclosure; and the attorney must demonstrate by a higher standard of clear and satisfactory evidence that the transaction was fundamentally fair and free of professional overreaching. *Williams*, 108 Nev. at 471-472, 836 P.2d at 618.

Here, Frank failed to value the law practice and simply drafted the agreement to award it to himself as his sole and separate property. Further, the agreement provided that Jane waived any interest in Frank's income for the years 1990, 1991, and 1992, without any knowledge of those amounts. Moreover, Jane agreed to be liable for one-half the share of the income tax due on the 1990 and 1991 income in which she waived any interest. We conclude that these provisions demonstrate, as a matter of law,

that Frank breached his duty of full and fair disclosure and that the transaction was fundamentally unfair.

Because this ground standing alone is sufficient to reverse, we need not address the other issue raised in this appeal: whether the district court erred in rejecting Jane's claim that Frank coerced her into signing the agreement.

For the foregoing reasons, we reverse the district court's order denying Jane's motion to vacate the divorce decree and for a new trial. We further vacate that part of the divorce decree relating to the property settlement agreement and remand for proceedings consistent with this opinion.[2,3]

---

[2]We note that "whenever a decree of divorce from the bonds of matrimony is granted in this state by a court of competent authority, the decree shall fully and completely dissolve the marriage contract as to both parties." NRS 125.130(2). Our decision in the instant case does not affect the dissolution of the parties' marriage itself. Rather, it voids that part of the judgment incorporating the property settlement agreement and allows the parties to litigate the division of their property.

[3]THE HONORABLE CHARLES SPRINGER, Justice, voluntarily recused himself from participation in the decision of this appeal.