137 Nev., Advance Opinion 60

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| GRADY EDWARD BYRD,<br>Appellant,<br>vs.<br>CATERINA ANGELA BYRD,<br>Respondent. | No. 80548-COA<br><br>FILED<br><br>SEP 3 0 2021<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a special order after final judgment modifying a decree of divorce. Eighth Judicial District Court, Clark County; Rhonda Kay Forsberg, Judge.

*Reversed and remanded.*

Mills & Anderson Law Group and Daniel W. Anderson and Byron L. Mills, Las Vegas,
for Appellant.

Webster & Associates and Jeanne F. Lambertsen and Anita A. Webster, Las Vegas,
for Respondent.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA, JJ.

*OPINION*

By the Court, BULLA, J.:

Four years after entering a divorce decree incorporating a marital settlement agreement, the district court granted a motion to modify

21-28064

that decree under NRCP 60(b)(6), which allows for relief from a judgment for any justifiable reason besides those otherwise specifically listed in that rule, and awarded respondent lifetime alimony. In so doing, the court refused to allow appellant to participate virtually from the Philippines, where he resides. In this appeal from the district court's modification order, we determine (1) whether the divorce decree was properly reopened under NRCP 60(b)(6) based on alleged misrepresentations made when the marital settlement agreement was entered, (2) whether federal preemption precludes the district court from ordering alimony to be paid directly from a veteran's disability benefits as indemnification for waiving a portion of a military pension plan, and (3) whether a district court may summarily deny a party's request to testify via audiovisual transmission pursuant to Part IX-B(B) of the Nevada Supreme Court Rules.

We conclude that NRCP 60(b)(6) relief was inappropriate in the instant case, that federal law prohibits state courts from ordering reimbursement and indemnification from a veteran's disability payments for the purpose of offsetting military pension waivers, and that the district court must consider the relevant good cause factors and the policy in favor of allowing parties to appear via audiovisual transmission when considering such a request. Accordingly, we reverse and remand.

I.

Appellant Grady Byrd and respondent Caterina Byrd were married in 1983. Because Grady was an active military member, the couple moved frequently and eventually relocated to Las Vegas in 2008. That same year, however, the couple ceased cohabitation. In June 2014, the district court granted the parties a summary divorce and merged their marital

settlement agreement (MSA) into the divorce decree. Later, Grady moved to the Philippines, where he currently resides.

Although the decree of divorce specifies that "neither party shall be required to pay spousal support to the other," it also provides that Grady will pay Caterina $1,500 per month to assist with her mortgage (the mortgage assistance provision) and that this payment may cease if Caterina's financial situation changes. The decree also provides that Caterina is entitled to 50 percent of Grady's military retirement pay. From 2014 until September 2018, Grady paid Caterina $3,000 per month total under these provisions.

In 2018, without explanation, Grady stopped making payments, and Caterina moved the district court to enforce the divorce decree. At the initial hearing on the motion, the district court opened discovery and set the matter for a status check but preliminarily concluded that the mortgage assistance provision constituted an alimony provision and that Grady was obligated to continue paying Caterina pending further proceedings. The court also found that 50 percent of Grady's military retirement pay was $1,500, as demonstrated by Grady paying Caterina $3,000 per month— $1,500 pursuant to the mortgage assistance provision and $1,500 as her portion of the retirement pay—for four years.

In April 2019, Grady filed a motion for reconsideration and argued that the district court's temporary order should be set aside, as the mortgage assistance provision was not an alimony provision and the parties mutually agreed to waive any alimony. Additionally, Grady argued that his net military retirement pay was $128.40 per month, entitling Caterina to $64.20 as her community share, and the remainder of his retirement pay was waived when he took disability pay pursuant to 10 U.S.C. § 1408 and

38 U.S.C. § 5305. Caterina opposed, arguing that the district court did not err in finding that Grady wrongfully terminated payments to Caterina and ordering him to continue the same. Caterina also counter-moved for relief from the decree pursuant to NRCP 60(b)(6) and to modify the decree, should the district court be inclined to grant Grady's motion for reconsideration. In particular, Caterina argued that, at the time of divorce, Grady misrepresented to her that his retirement pay was valued at approximately $3,000 per month, such that her 50-percent interest would be approximately $1,500 per month. Thus, she reasoned that if he intended for Caterina to waive alimony based on this misrepresentation, then he fraudulently induced Caterina into signing the MSA. At the hearing on Grady's motion, the district court set the matter for an evidentiary hearing and stated that he would be required to be present. Further, the court concluded that its temporary order[1] should be set aside, as the mortgage assistance provision was not alimony but rather constituted a community property distribution. The district court also ordered Grady to continue paying Caterina as previously ordered until such time that he proved her financial circumstances had changed, pursuant to the terms of the MSA.

Grady did not make monthly payments as ordered, and Caterina filed an emergency motion for an order to show cause why Grady should not be held in contempt. At the hearing on Caterina's motion, the courtroom clerk attempted to contact Grady at the phone number provided

---

[1]The Honorable Kathy Hardcastle, Senior Judge, conducted the initial hearing on Caterina's motion to enforce the decree, but Grady's motion for reconsideration was heard by the Honorable Rhonda Kay Forsberg, Judge. Similarly, while Senior Judge Hardcastle presided over the subsequent evidentiary hearing, Judge Forsberg signed the final order stemming from that hearing.

to the court, but the call failed to go through. Additionally, at the hearing, the court noted that Grady's counsel represented Grady would not pay Caterina, despite the court's interim orders, until the evidentiary hearing resolved the issues. Further, the district court noted at the hearing and in its subsequent order that Grady had not filed an opposition to the motion. Accordingly, the district court issued an order to show cause why Grady should not be held in contempt, to be heard at the same time as the evidentiary hearing to modify or set aside the divorce decree.

Prior to the evidentiary hearing, Grady filed a request with the district court to appear via audiovisual transmission, citing his inability to fly internationally because of a pulmonary condition. Although no order appears in Grady's appendix on appeal, he represented in his motion for reconsideration and on appeal that the district court summarily denied his request without any explanation. In its order following the evidentiary hearing, the district court likewise denied Grady's motion for reconsideration on this issue.

At the evidentiary hearing, which Grady did not attend, it was revealed through Caterina's testimony, as well as various documents, that prior to the couple's divorce, Grady had waived nearly $3,000 of his monthly retirement pay in favor of receiving veterans' disability benefits pursuant to federal law. As a result, the value of Grady's pension was reduced from $3,017 to $128.40 per month, entitling Caterina to a monthly payment of only $64.20. But, according to Caterina's testimony, Grady represented at the time of the parties' divorce that his monthly retirement pay was $3,017 and, therefore, under the decree he was obligated to pay her $3,000 per month—$1,500 pursuant to the mortgage assistance provision and $1,500 as her one-half interest in his military retirement, which was consistent

with the payments Grady made for the first four years after the decree was entered, until he ceased paying in 2018. Notably, because Grady was not permitted to appear remotely and did not appear in person, he did not testify to rebut any of this evidence.

After the evidentiary hearing, the district court modified the decree, concluding, among other things, that (1) the alimony waiver was unenforceable; (2) because Grady waived a portion of his military retirement pay, he must continue to pay Caterina monthly from his veteran's disability benefits; (3) Grady owed Caterina a fiduciary duty, which he breached by misrepresenting his assets, thus making NRCP 60(b)(6) relief appropriate; (4) Caterina's request for NRCP 60(b)(6) relief was timely; (5) the divorce decree's mortgage assistance and military pension clauses were vague and ambiguous; and (6) Caterina was entitled to lifetime alimony. Grady now appeals.

In this appeal, we address the following issues: (1) whether the district court abused its discretion in modifying the decree of divorce under NRCP 60(b)(6), (2) whether the district court erred when it ordered Grady to pay alimony directly from his veteran's disability benefits, and (3) whether the district court abused its discretion when it summarily denied Grady's request to appear via audiovisual transmission.

II.

We first address the district court's decision to modify the divorce decree under NRCP 60(b)(6). When Grady stopped paying Caterina $3,000 per month, the amount she believed she was entitled to under the decree, Caterina moved to enforce the decree. After additional motion practice, the district court ultimately held an evidentiary hearing, concluded that portions of the decree should be set aside pursuant to NRCP

60(b)(6), and modified the decree to award Caterina lifetime alimony. Grady challenges this decision on appeal, asserting that NRCP 60(b) relief was improper.

The district court has inherent authority to interpret and enforce its decrees. *Henson v. Henson*, 130 Nev. 814, 820 n.6, 334 P.3d 933, 937 n.6 (2014) (citing *In re Water Rights of the Humboldt River*, 118 Nev. 901, 906-07, 59 P.3d 1226, 1229-30 (2002), for the proposition that the district court has inherent authority to enforce its orders); *Kishner v. Kishner*, 93 Nev. 220, 225, 562 P.2d 493, 496 (1977) (explaining that the district court "has inherent power to construe its judgments and decrees for the purpose of removing any ambiguity"). But "[a] decree of divorce cannot be modified or set aside except as provided by rule or statute." *Kramer v. Kramer*, 96 Nev. 759, 761, 616 P.2d 395, 397 (1980). Here, the district court purported to partially set aside and modify the decree of divorce pursuant to NRCP 60(b)(6).

The district court has broad discretion to grant or deny a motion to set aside a judgment under NRCP 60(b), and "[i]ts determination will not be disturbed on appeal absent an abuse of discretion." *Cook v. Cook*, 112 Nev. 179, 181-82, 912 P.2d 264, 265 (1996). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006). Although review for abuse of discretion is deferential, "deference is not owed to legal error." *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010).

NRCP 60(b) provides, as pertinent here, that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . .

(1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief." "A motion under Rule 60(b) must be made within a *reasonable time*—and for reasons (1) . . . and (3) no more than *6 months* after the date of the proceeding or the date of service of written notice of entry of the judgment or order, whichever date is later." NRCP 60(c)(1) (emphases added). Furthermore, the time limits set forth in NRCP 60 are generally applicable to divorce decrees. *See, e.g., Mizrachi v. Mizrachi*, 132 Nev. 666, 673, 385 P.3d 982, 986 (Ct. App. 2016); *see also Kramer*, 96 Nev. at 762-63, 616 P.2d at 397-98.

NRCP 60(b)(6) is a recent addition to the Nevada Rules of Civil Procedure. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, December 31, 2018). According to the advisory committee, "[t]he amendments generally conform Rule 60 to FRCP 60, including incorporating FRCP 60(b)(6) as Rule 60(b)(6)." NRCP 60(b) advisory committee's note to 2019 amendment. It is well established that when, as here, there is no mandatory decisional law interpreting a rule of civil procedure, this court looks to federal cases for guidance. *McClendon v. Collins*, 132 Nev. 327, 330, 372 P.3d 492, 494 (2016) (concluding that the "[f]ederal cases interpreting the Federal Rules of Civil Procedure are strong persuasive authority, because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts" (internal quotation marks omitted)).

Generally, Rule 60(b)(6) has a limited and unique application. As the United States Supreme Court has acknowledged, "Rule 60(b)(6) is available only in extraordinary circumstances," *Buck v. Davis*, 580 U.S. ___, ___, 137 S. Ct. 759, 777 (2017) (internal quotation marks omitted), "which are not addressed by the first five numbered clauses of the Rule and only as a means to achieve substantial justice." *Tanner v. Yukins*, 776 F.3d 434, 443 (6th Cir. 2015) (internal quotation marks omitted). In other words, NRCP 60(b)(6) provides an independent basis for relief that is mutually exclusive of clauses (1)-(5). *See* 11 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*, § 2864 (3d ed. 2012) (explaining "that clause (6) and the first five clauses are mutually exclusive and that relief cannot be had under clause (6) if it would have been available under the earlier clauses"); *see also Klapprott v. United States*, 335 U.S. 601, 613-15 (1949) (stating that subsection (6) applies "for all reasons except the five particularly specified" in Rule 60(b)(1)-(5) when "appropriate to accomplish justice").

Here, we agree with Grady that relief under NRCP 60(b)(6) was improper. While Caterina argued in her motion practice below that the district court could modify the decree because extraordinary circumstances existed warranting NRCP 60(b)(6) relief, her basis for relief sounded in NRCP 60(b)(1) or 60(b)(3). Specifically, Caterina alleged that Grady "misinformed [her] and led her to believe that he would give her $3,000.00 per month for his lifetime." These allegations sound in fraud, misrepresentation, mistake, or excusable neglect. Thus, Caterina's assertions fell within the ambit of NRCP 60(b)(1) or 60(b)(3) rather than NRCP 60(b)(6). And because Caterina's claim is one that is specifically contemplated by the first five enumerated sections of NRCP 60(b), relief

COURT OF APPEALS
OF
NEVADA

(O) 1947B

under NRCP 60(b)(6) is unavailable. *Klapprott*, 335 U.S. at 613-15; *see also* 11 Wright, Miller & Kane, *supra*, § 2864.

Moreover, motions for relief based on mistake, inadvertence, surprise, or excusable neglect, or fraud, misrepresentation, or misconduct, under NRCP 60(b)(1) or 60(b)(3), respectively, must be brought within six months of service of the written notice of entry of the judgment. NRCP 60(c)(1). Therefore, even if the district court had construed Caterina's motion as seeking relief under NRCP 60(b)(1) or 60(b)(3), rather than 60(b)(6), such a motion would have been untimely here, and relief on that basis would have likewise been improper. Accordingly, the district court abused its discretion in granting relief pursuant to NRCP 60(b). *See Cook*, 112 Nev. at 182, 912 P.2d at 265.

But this does not end our analysis. As noted above, Caterina initially moved to enforce the decree, asserting that the mortgage assistance payment was truly an alimony award and that Grady refused to provide Caterina with any documentation demonstrating she was receiving her portion of the retirement pay, such that she did not know whether she was receiving her awarded interest. And the district court has the inherent authority to interpret and enforce its decrees. *Henson*, 130 Nev. at 820 n.6, 334 P.3d at 937 n.6; *Kishner*, 93 Nev. at 225, 562 P.2d at 496. Yet here, the district court failed to consider Caterina's motion on this basis. Thus, reversal and remand is warranted for the district court to consider the issues presented under the appropriate authority.[2] And, in light of this

---

[2]We recognize that the district court concluded the decree was ambiguous and interpreted the mortgage assistance provision as periodic payments constituting alimony despite the parties' purported agreement to waive alimony in the MSA. And we note that alimony may be modified

COURT OF APPEALS
OF
NEVADA

(O) 1947B

10

conclusion, we find it necessary to address Grady's remaining arguments on appeal to ensure this matter is properly considered on remand.

### III.

Grady next contends that the district court erred when it ordered him to make alimony payments to Caterina directly from his veteran's disability benefits. Under federal law, "a State may treat veterans' 'disposable retired pay' as divisible property, *i.e.*, community property divisible upon divorce." *Howell v. Howell*, 581 U.S. __, __, 137 S. Ct. 1400, 1403 (2017) (citing 10 U.S.C. § 1408(c)(1)). However, "amounts deducted from that pay 'as a result of a waiver . . . required by law in order to receive' disability benefits" are excluded from this rule. *Id.* at __, 137 S. Ct. at 1403 (citing 10 U.S.C. § 1408(a)(4)(B)). The amounts are excluded from the divisible property allocation even when that means the value of a spouse's share of the military retirement pay is worth less than the spouse believes at the time of the divorce. *Id.* at __, 137 S. Ct. at 1405. Therefore, under federal law, only a veteran's net disposable retirement pay is divisible as community property, whereas his or her waived amount, taken in the form of disability pay, is not community property subject to such division. *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989) (holding that federal law wholly preempts states from treating military retirement pay that has been waived to receive veterans' disability benefits as community property).

In *Howell*, John, the ex-husband, "elected to receive disability benefits and consequently had to waive about $250 per month of the roughly

---

under certain circumstances pursuant to NRS 125.150. But because the district court ultimately decided to set aside part of the decree and modify it pursuant to NRCP 60(b), failing to consider NRS 125.150 in so doing, we make no comment as to the merits of these conclusions. Instead, we remand the matter for the district court to consider these issues in the first instance.

$1,500 of military retirement pay he shared with Sandra [his ex-wife]." *Howell*, 518 U.S. at ___, 137 S. Ct. at 1404. Sandra moved the Arizona family court to enforce the decree, requesting that the court "restor[e] the value of her share of John's total retirement pay." *Id.* The family court "ordered John to ensure that Sandra 'receive her full 50% of the military retirement without regard for the disability.'" *Id.* Subsequently, the Arizona Supreme Court affirmed, reasoning that the family court's ruling did not implicate federal preemption because it "simply ordered John to 'reimburse' Sandra for 'reducing . . . her share' of military retirement pay." *Id.* John petitioned the United States Supreme Court for certiorari, and the Court granted his petition. *Id.*

In its opinion, the Court noted that, consistent with *Mansell*, "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property." *Id.* at ___, 137 S. Ct. at 1405. In light of *Mansell*, the Court concluded that it was compelled to reverse the decision of the Arizona court because "the reimbursement award" to Sandra was tantamount to "an award of the portion of military retirement pay that John waived in order to obtain disability benefits," which is precisely "the portion that federal law prohibits state courts from awarding to a divorced veteran's former spouse." *Id.* Moreover, the Court noted, "[r]egardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted." *Id.* at ___, 137 S. Ct. at 1406. Additionally, the timing of the waiver—i.e., whether it occurred prior to or after the divorce—is irrelevant to the analysis. *Id.* at ___, 137 S. Ct. at 1405.

Here, the district court concluded that Grady was obligated to pay Caterina $1,500 per month from his military retirement and that he could not reduce this payment by claiming it was disability pay. The court went on to conclude that because Grady waived a portion of his retirement in favor of veterans' disability benefits and Caterina needed support, "Caterina should receive lifetime alimony." The district court then ordered Grady to reimburse Caterina "from [his] military pension disability." This was error.

Like in *Howell*, the district court ordered Grady to indemnify Caterina directly from his disability benefits to offset the loss of her interest in the retirement benefits based on Grady's retirement waiver. But pursuant to *Howell*, such orders are exactly what federal law forbids, and therefore, "[a]ll such orders are . . . pre-empted" by federal law and invalid. 581 U.S. at ___, 137 S. Ct. at 1406. Accordingly, because the district court ordered Grady to reimburse Caterina directly from his disability benefits, which is prohibited by federal law, the district court's order is invalid as a matter of law.

To the extent that both the district court and Caterina appear to suggest that *Mansell* and *Howell* are distinguishable from the instant case, and that the Nevada Supreme Court's decision in *Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507 (2003), controls, we disagree. In *Shelton*, the district court did not order the ex-husband to reimburse the ex-wife directly from his disability benefits. Instead, the court concluded that pursuant to the parties' agreement, the ex-husband was obligated to pay the ex-wife $577 per month. *Shelton*, 119 Nev. at 497, 78 P.3d at 510.

Importantly, the court did not order those payments to come directly from the ex-husband's disability pay; indeed, the court noted that

"[i]t appears that [the ex-husband] possesses ample other assets from which to pay his obligation without even touching his disability pay." *Id.* at 498, 78 P.3d at 510-11. Thus, the court concluded that under the divorce agreement the ex-husband was obligated to pay his ex-wife $577 and he could satisfy that obligation from any one of his available assets. *Id.* Notably, when first determining the value of the parties' assets at divorce, the district court may take into account that some military retirement pay might be waived, and it likewise may take into account reductions in the value of the retirement pay "when it calculates or recalculates the need for spousal support." *Howell*, 518 U.S. at ___, 137 S. Ct. at 1406. We also note that *Shelton* predates *Howell*, and *Howell* confirmed and clarified the scope of federal preemption in this context.

Here, by contrast, the district court specifically ordered Grady to reimburse Caterina "from [his] military pension disability," which patently violates *Mansell* and *Howell*. And the district court cannot avoid this problem by referring to the allocation as alimony rather than community property because, as the *Howell* court recognized, the form of the allocation is irrelevant. 581 U.S. at ___, 137 S. Ct. at 1406. In other words, the order's effect is more important than how it is styled. Thus, the order at issue in this case violates federal law because it directs Grady to indemnify Caterina directly from his disability benefits. Consequently, we conclude that this portion of the district court's order is preempted by federal law and is therefore invalid.

IV.

Finally, Grady argues that the district court abused its discretion when it summarily denied his initial request, as well as his motion for reconsideration, to testify from his home in the Philippines via

audiovisual transmission pursuant to Part IX-B(B) of the Nevada Supreme Court Rules.

This court reviews a district court's decision whether to permit a witness to testify via audiovisual transmission for an abuse of discretion. *See LaBarbera v. Wynn Las Vegas, LLC*, 134 Nev. 393, 395, 422 P.3d 138, 140 (2018). In order "[t]o improve access to the courts and reduce litigation costs, courts shall permit parties, to the extent feasible, to appear by simultaneous audiovisual transmission equipment at appropriate proceedings pursuant to these rules." *Id.* (quoting SCR Part IX-B(B)(2)) (internal quotation marks omitted). Under these rules, "shall" is mandatory. SCR Part IX-B(B)(1)(5).

Proceedings that are considered appropriate for audiovisual transmission include "[t]rials [and] hearings at which witnesses are expected to testify . . . provided there is good cause as determined by the court in accordance with Rule 1(6)." SCR Part IX-B(B)(4)(1)(a). "Good cause" may consist of any number of factors as determined by the court, including whether a timely objection has been made; whether allowing the appearance would cause any undue surprise or prejudice; the convenience of the parties, counsel, and the court; any cost and time savings; whether the appearance by audiovisual equipment would allow effective cross-examination; the importance of live testimony; and the quality of the communication, among other things. SCR Part IX-B(B)(1)(6)(a)-(k). "The Nevada Supreme Court Rules favor accommodation of audiovisual testimony upon a showing of good cause." *LaBarbera*, 134 Nev. at 395, 422 P.3d at 140.

Here, Grady produced documentation from three healthcare providers indicating that he was unable to travel internationally due to his

underlying health condition. Additionally, the district court was fully aware that Grady resided in the Philippines, which could make it costly to travel, and therefore denying his request could mean that he would not be present at the evidentiary hearing to testify. Moreover, Caterina's opposition failed to assert, and there was no finding of, any undue surprise or prejudice. In contrast, the record demonstrates that the district court found Grady's medical notes were not credible because Grady failed to provide any evidence of an actual diagnosis, as the medical notes he provided indicated only that he should follow up with his doctors at the Department of Veterans Affairs. Additionally, the district court indicated that it had previously attempted to contact Grady during a hearing and was unable to do so, such that it had concerns regarding whether Grady would actually be available during the evidentiary hearing, and Grady had openly defied the court's prior orders. Ultimately, the district court denied Grady's initial request and then denied his motion for reconsideration.

Based on the foregoing, we recognize that there were a number of factors pertinent to the district court's decision. And while the district court has discretion in determining whether to grant a request to appear via audiovisual transmission, the court must determine whether good cause exists based on all of the relevant factors and in light of the policy in favor of allowing such appearances. *See LaBarbera*, 134 Nev. at 395, 422 P.3d at 140. Here, nothing in the record demonstrates whether the court considered the SCR Part IX-B(B)(1)(6) factors in denying Grady's request, and the district court failed to make any good cause findings. While the record indicates that the district court considered Grady's medical notes and concluded they were not credible, in denying reconsideration of the denial of his request to appear by audiovisual equipment, consideration of these

notes alone is insufficient, as the district court is required to consider all of the relevant good cause factors under SCR Part IX-B(B)(1)(6) in light of the policy in favor of allowing audiovisual appearances. *See id.* As a result, we would normally conclude that the district court abused its discretion in denying Grady's request to appear telephonically.

Nevertheless, at the time set for the evidentiary hearing on the motions relating to the terms of the decree, the matter was also set for a show cause hearing regarding Grady's failure to pay the monthly amounts previously ordered by the court. In this case, the show cause hearing was not set as a stand-alone hearing but rather with the evidentiary hearing, and Grady's personal appearance was required for the hearing pursuant to the order to show cause.[3] SCR Part IX-B(B)(4)(2)(b) (providing that personal appearance is required for those ordered to appear for a show cause hearing). Notably, Caterina argued on appeal that Grady was required to appear for the order to show cause hearing, and Grady failed to address this argument in his reply brief. Therefore, under the particular facts of this case, we cannot conclude that the district court abused its

---

[3]We note that when a party is required to appear personally for a show cause hearing but seeks to appear via audiovisual equipment for a separate hearing, like an evidentiary hearing, the district court could bifurcate the show cause hearing from the pending substantive motions. In such a case, the district court could continue the hearing on the order to show cause to a date when the party can appear in person, while still permitting the party to appear remotely for the evidentiary hearing only, to ensure the party can meaningfully participate in the evidentiary hearing. *See LaBarbera*, 134 Nev. at 396, 422 P.3d at 140 (concluding that the district court's denial of a request to appear via audiovisual equipment was prejudicial because the party's absence prevented him from responding to the testimony presented at trial); *see also Fisher v. McCrary Crescent City, LLC*, 972 A.2d 954, 983 (Md. Ct. Spec. App. 2009) ("A party's right to be present at a hearing or trial is a substantial right.").

discretion in requiring Grady's appearance at the time set for hearing on the order to show cause, even though his participation by audiovisual equipment for the evidentiary hearing may have otherwise been appropriate. Regardless, because we find it necessary to reverse and remand on the issues discussed above, we note that on remand the district court should consider all of the relevant factors when determining whether Grady's personal appearance is required for any future hearings should Grady again request to appear via audiovisual equipment.

## V.

In summary, the district court abused its discretion in modifying the decree of divorce pursuant to NRCP 60(b)(6), as Caterina's assertions sounded in NRCP 60(b)(1) or 60(b)(3) and NRCP 60(b)(6) only applies in extraordinary circumstances not addressed by NRCP 60(b)(1)-(5). The district court likewise abused its discretion in ordering Grady to pay Caterina alimony directly from his veteran's disability benefits, as such an order is preempted by federal law. Finally, while a district court abuses its discretion in summarily denying a request to appear via audiovisual transmission without addressing the good cause factors, because the record here demonstrates that the matter was also set for a show cause hearing, we ultimately cannot conclude that the district court abused its discretion in requiring Grady's appearance at the hearing. Nonetheless, on remand, the district court must consider the relevant factors when considering whether Grady must appear in person at any future hearings should he again request to appear via audiovisual transmission.

Accordingly, we reverse the district court's modification order and remand with instructions for the district court to conduct further proceedings consistent with this opinion.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Tao